IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MANUEL BENSON,

                          Plaintiff,


             vs.                              Case No. 07-2171-JTM


HAWKER BEECHCRAFT CORP.,


                          Defendant.


## MEMORANDUM AND ORDER

Presently before the court is Defendant Hawker Beechcraft Corporation (HBC's) motion

for summary judgment on all of Plaintiff Manuel Benson's claims (Dkt. No. 43).  The court held

oral argument on the motion on June 9, 2008.  After carefully considering the briefs and the

arguments, the court grants the motion.

### I.  Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact, and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c).  An issue is "genuine" if "there is sufficient evidence on

each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-*

*Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).  A fact is "material" if, under the

applicable substantive law, it is "essential to the proper disposition of the claim." *Id.*  In

considering a motion for summary judgment, the court must examine all of the evidence in a

light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir. 1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate* Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1).

## II.  Facts

The court makes the following findings of fact. Excluded from these findings are allegations of fact which are not supported by the cited evidence, which are grounded on hearsay or other inadmissible evidence, or which reflect an unexplained and unjustified contradiction of earlier deposition testimony. *See Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986).

Mr. Benson worked for HBC from October 1998, until his employment was involuntarily terminated on April 29, 2005.  HBC has a drug and alcohol policy, which provides assistance through the Employee Assistance Program (EAP) to employees who voluntarily seek help for a drug or alcohol related problem.  HBC policy provides that seeking help will not serve as a basis for discipline against the employee if he or she: (1) requests help through the EAP before being sent to the Occupational Health Services (OHS) department for a drug or alcohol test; (2) successfully completes an approved rehabilitation program; (3) successfully completes any aftercare program recommended by the EAP or its referral sources; and (4) abstains from the use of any and all illegal drugs or alcohol after receiving treatment.  This policy is communicated to employees during orientation, and was presented to Mr. Benson on three separate occasions throughout the course of his employment.

On January 24, 2005, Mr. Benson informed OHS that unidentified personal issues were affecting his job performance, and that he had recently been suspended for violating Rule 36 of the Rules of Conduct, because he made scrap unnecessarily.  He was then referred to the EAP, presumably for additional counseling.

On January 26, 2005, during the disciplinary process for the Rule 36 violation, Mr. Benson entered a "Last Chance Agreement" with HBC, apparently because he previously had violated the same rule.  The agreement stated that HBC had grounds to terminate his employment, but would allow him to continue working as long as he complied with the terms of the agreement, which required him to successfully complete any and all counseling recommended by the EAP, and to comply with all other company policies.

-3-

During the Rule 36 disciplinary process, Mr. Benson took a drug test.  On January 31, 2005, a few days after the disciplinary proceeding, HBC learned that Mr. Benson's drug test was positive, and, in accordance with HBC's drug policy, suspended him for thirty days to undergo treatment.  The treatment program required that he complete an aftercare program, and that he thereafter abstain from illegal drugs, or risk termination.

After successfully completing STOP, an out-patient treatment program, Mr. Benson participated in an out-patient aftercare program.  To successfully complete the aftercare program, Mr. Benson had to attend weekly meetings with his counselor, and remain clean and sober.  After returning to work in March, he began missing meetings and using cocaine again.  He was advised by personnel from the STOP Program to seek in-patient care.  Mr. Benson stopped showing up for work on April 15, 2005.  On April 20, 2005, he checked into Valley Hope Halstead, a rehabilitation facility, for inpatient treatment, and successfully completed that program on May 20, 2005.

Mr. Benson requested leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, for April 15, 16, 18, 19, and 20, 2005 and April 21 to May 21, 2005.  On April 26, 2005, as part of the FMLA verification process, Valley Hope faxed a Certification of Health Care Provider to HBC, which stated that Mr. Benson needed to be absent from work for thirty days for treatment for crack cocaine dependency.  There is a dispute about whether Mr. Benson was granted FMLA leave.  Mr. Benson stated under oath that he was approved, and a contemporaneous note reflects this approval.  An email from Occupational Health Services states that he was not approved.  As will be discussed in the analysis, this factual dispute is not fatal to HBC's request for summary judgment.

-4-

On April 29, 2005, HBC informed Mr. Benson that he was in violation of the drug and alcohol policy, and that his employment was terminated effective that date.  Since 2000, HBC has terminated seventy-two other employees for violating the drug and alcohol policy.  It is uncontroverted that if an employee violates the drug and alcohol policy, the same disciplinary action is taken regardless of whether the employee has used FMLA leave.

Mr. Benson alleges that HBC interfered with his right to FMLA leave and ultimately, that he was terminated for requesting it.

### III.  Analysis

Mr. Benson initially claimed breach of contract and interference with his right to FMLA leave.  However, Mr. Benson has abandoned the contract claim, and the court will address only the FMLA interference claim.

To establish a prima facie case of interference, a plaintiff must prove that: (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to FMLA leave, and (3) the interference was associated with his request for FMLA leave.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (internal citations omitted).  Even if a plaintiff is able to prove each of these elements, the FMLA does not give employees greater protection than is available to an employee who continues to work.  *Id*.  Consequently, an employer may chose to dismiss an employee, even if doing so interferes with the employee's access to FMLA leave, when the employee would have been dismissed regardless of a request for leave.  *Id*.  The employer must establish the independent basis for dismissal.  *Id.*

In this case, Mr. Benson does not meet the prima facie case for interference.  While he can show entitlement to and interference with leave for one of the requested time periods, HBC

has proven that it would have dismissed Mr. Benson regardless of his request.  Consequently, HBC is entitled to summary judgment on the FMLA claim.

**A.  Prima Facie Interference Claim**

1.  Entitlement to FMLA Leave

FMLA provides that employees may take up to twelve work weeks of FMLA leave during a twelve-month period, when, among other reasons, an employee has "a serious health condition that makes the employee unable to perform the functions of such employee."  29 U.S.C. § 2612(a)(1)(D).  The Code of Federal Regulations provides that substance abuse can be considered a serious health condition, but FMLA leave can only be used for treatment of that condition.  29 C.F.R. § 825.114(d).  It is not available when an employee is absent due to use of the substance.  *Id.*

Prior to his termination, Mr. Benson requested two leave periods: (1) April 15, 16, 18, 19, and 20, 2005; and (2) April 21 to May 21, 2005.  During the first, Mr. Benson was enrolled in an aftercare program, which is arguably a form of treatment.  Assuming that the aftercare program can be considered "treatment," it would not account for his absence because it only required that he attend weekly meetings for one or two hours, not that he miss entire days of work.  Based on his admission to staff at Valley Hope that he used cocaine daily for the week preceding April 20, it is more likely that Mr. Benson's drug use, as opposed to drug treatment, caused his absences.  Consequently, Mr. Benson has not shown that he was entitled to FMLA leave for the first time period.

For the second time period, Mr. Benson was entitled to FMLA leave because he was being treated for substance abuse.  *See* 29 C.F.R. § 825.114(d).

2.  Employer's Adverse Action Interfered with FMLA Leave

To satisfy the second element of an interference claim, an "employee must show that [he] was prevented from taking the full twelve weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Campbell v. Gambro Healthcare, Inc.,*478 F.3d 1282, 1288 (10th Cir. 2007).  Regardless of whether Mr. Benson was approved for FMLA leave, the second element of the interference claim is satisfied.  If he was not approved for FMLA leave, denying leave for the second time period would be an interference of his FMLA rights.  If he was approved for FMLA leave, termination of his employment interfered with his right to the full twelve weeks of FMLA leave, satisfying the second element of his interference claim.

3.  Correlation Between Interference and FMLA Leave

The third element of an interference claim requires that the employer's interference with FMLA rights was related to the employee's request for leave.  *Metzler*, 464 F.3d at 1180. Because the FMLA gives no more protection to employees who take leave than is already available for other employees, it does not prevent a valid termination of employment.  *Id.*  Once an employee has proven interference with FMLA rights, the burden is on the defendant-employer to show that the employee would have been dismissed regardless of a request for leave. *Campbell*, 478 F.3d at 1287.

29 C.F.R. § 825.112(g) provides:

if [an] employer has an established policy, applied in a non-discriminatory manner that has been communicated to all employees, that provides under certain circumstances an employee may be terminated for substance abuse, pursuant to that policy the employee may be terminated whether or not the employee is presently taking FMLA leave.

Mr. Benson has established both: (1) that he was entitled to leave for the second period; and (2) that HBC interfered with that leave. Thus, the burden shifts to HBC to prove that Mr. Benson would have been dismissed regardless of his request for leave. HBC has an established drug policy allowing employee termination for substance abuse if an employee fails to "obtain, fully comply with, or successfully complete treatment." HBC communicates this policy to all employees during orientation; the company has fired seventy-two other employees for violating the policy in the last eight years. If an employee violates the drug and alcohol policy, HBC takes the same disciplinary action regardless of whether the employee has used FMLA leave. The policy is applied in a non-discriminatory manner, and Mr. Benson has not suggested otherwise. Based on these facts, HBC's drug policy conforms to 29 C.F.R. § 825.112(g).

HBC was unaware that Mr. Benson had relapsed until it received the fax from Valley Hope during the FMLA certification process. His continuing drug use violated the company policy, which required him to successfully complete the aftercare program and to abstain from using illegal drugs. Under the law, HBC had the authority to terminate Mr. Benson's employment. HBC dismissed Mr. Benson during the FMLA certification process, but the FMLA request was not the cause. The fax from Valley Hope merely informed HBC that Mr. Benson had relapsed and was using illegal drugs in violation of company policy.

In *Coleman v. Blue Cross Blue Shield of Kansas*, the defendant offered evidence that the plaintiff's work had been slipping and that she had been warned that failure to comply with performance standards would result in termination. 487 F.Supp.2d 1225, 1247 (D. Kan. 2007) Her employer dismissed her when she failed to meet performance standards. *Id.* at 1242. While examining these facts to decide whether to grant defendant's motion for summary judgment, the

court stated that "[p]laintiff's termination for failing to meet objective criteria applicable to any other employee in her position belies the notion that plaintiff would not have been terminated absent her 'request for or taking of FMLA leave.'" *Id.* at 1247 (quoting *Metzler*, 464 F.3d at 1180.).   The court found the defendant offered sufficient proof that plaintiff would have been dismissed and that summary judgment was proper. *Id.*

Similarly, Mr. Benson signed a "Last Chance Agreement" just before starting rehabilitation, suggesting that he was already at risk of losing his job because of his previous Rule 36 violations.   The agreement clearly required that he complete any and all counseling suggested by EAP or risk immediate dismissal.   After failing the drug test, his counseling included substance abuse treatment, which required that he abstain from illegal drugs.   When HBC learned that he had relapsed, it acted in a manner consistent with both its drug policy and the "Last Chance Agreement."

**B.  Conclusion**

While Mr. Benson can prove the first two elements of his interference claim for the second time period, HBC has shown that he would have been dismissed regardless of his request for leave.   Consequently, Mr. Benson has failed to establish a prima facie case of FMLA interference and summary judgment is proper.

IT IS THEREFORE ORDERED this day 17th of September, 2008, that the court grants defendant's motion for summary judgment (Dkt. No. 43).

s/ J. Thomas Marten
 J. THOMAS MARTEN, JUDGE